OPINION OF THE COURT
Kaye, J.
The question presented on this appeal is whether dismissal of two informations was an appropriate response to the prosecution’s wrongful failure to preserve discoverable evidence. Because less drastic sanctions would have cured *519 any prejudice to defendants, we hold that the court abused its discretion in dismissing the charges.
On the evening of March 21,1981 defendants, Nathaniel Kelly and Angel Marrero, acting together, allegedly approached an undercover police officer, struck him, reached into his shoulder bag and removed a wallet containing several bills. Police apprehended defendants and charged each of them by information with criminal possession of stolen property in the third degree and petit larceny. In response to counsel’s motion to discover any property taken from defendants, the prosecutor said that the police had obtained a brown wallet and $22 in cash, consisting of one $20 bill and two $1 bills. When the Assistant District Attorney met counsel at the property clerk’s office to display the evidence, it could not be found. Subsequently, the prosecutor learned that the wallet and cash had been vouchered but, pursuant to police practice in decoy pickpocket cases, was immediately returned to the decoy officer. The evidence is irretrievably lost.
Defendants moved to dismiss the charges because of the lost evidence. They claimed that the failure to preserve the property violated section 450.10 of the Penal Law, which prohibited the return of such property without court order,[1] and effectively precluded assertion of an entrapment defense. According to the defense, the alleged $20 bill in fact was a $1 bill, doctored to resemble a 20. This evidence would demonstrate, defendants argued, that the police intended to use the money as an inducement and positioned it in the wallet to be visible to passersby. The prosecutor sought to justify the practice of returning the property and contended that the evidence did not further an entrapment defense because it would not in any event have shown the positioning of the wallet or bills. Criminal Court granted defendants’ motion, concluding that the *520 evidence was discoverable and that the People violated their duty to preserve it. As to the appropriate sanction, the court dismissed the charges because the “absence of the missing evidence herein totally destroys defendants’ ability to cross-examine the People’s witnesses or to otherwise establish the affirmative defense of entrapment.” The Appellate Term affirmed, without opinion. We now reverse.
A necessary corollary of the duty to disclose is the obligation to preserve evidence until a request for disclosure is made (United States v Bryant, 439 F2d 642; People v Saddy, 84 AD2d 175). Any other rule would facilitate evasion of the disclosure requirements (United States v Bryant, 439 F2d 642, 651, supra). Accordingly, where discoverable evidence gathered by the prosecution or its agent is lost, the People have a heavy burden of establishing that diligent, good-faith efforts were made to prevent the loss. (id.; see, also, United States v Augenblick, 393 US 348, 355-356). Otherwise, sanctions will be imposed.
The People readily admit that the wallet and currency were discoverable as “property obtained from the defendant” (CPL 240.20, subd 1, par [e]). The government was statutorily obligated to retain possession of this evidence until a court ordered it released (Penal Law, § 450.10), and the intentional relinquishment here was inexcusable.[2] Though the police practice of giving back the property whenever decoy officers are involved may, as the People argue, demonstrate the absence of any intent to harm these defendants, it falls far short of satisfying the People’s burden of establishing that they are not accountable for the loss. The only question, then, is what sanctions were necessary.
In fashioning an “appropriate” response to the prosecution’s wrongful failure to preserve evidence (see CPL 240.70, subd 1), the degree of prosecutorial fault surely may be considered, but the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society. Courts have devised a number of methods to reach this goal. For illustration only, and *521 without approving or disapproving the sanctions imposed, we note that where tape recordings of an alleged drug sale were erased, thereby hindering the defendants’ agency defense, courts have reduced convictions of criminal sale of a controlled substance to possession (People v Saddy, 84 AD2d 175, supra); where minutes of prior testimony of prosecution witnesses were lost, courts have precluded the witness from testifying (People v Lunney, 84 Misc 2d 1090), ordered a reconstruction hearing (People v Hicks, 85 Misc 2d 649), and directed the People to turn over all remaining minutes and records of the witness’ statements (People v Aviles, 89 Misc 2d 1). Where the prosecution’s failure to preserve a door allegedly undermined the defendant’s justification defense, the court has instructed the prosecutor to turn over all the Grand Jury testimony concerning the forcible entry and reserved the right to impose additional sanctions at trial, including an unfavorable inference charge (People v Emmons, 99 Misc 2d 941). In other instances, charges have been dismissed. In People v Churba (76 Misc 2d 1028), for instance, the “blatantly careless” manner in which the prosecution agents unsuccessfully attempted to preserve a television set led the court to dismiss because the defense would be greatly disadvantaged in attempting to show that the repairs for which the defendant billed the owners were actually accomplished. (See, also, People v Szychulda, 57 NY2d 719; People v Davis, 105 Misc 2d 409, affd 109 Misc 2d 230; and People v Fleishman, 92 Misc 2d 156.)
Although the choice of “appropriate” action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence. Since such measures were clearly available here, the court abused its discretion in dismissing the charges.
Defendants advance two reasons why dismissal was necessary. First, they argue that the evidence was indispensable to an entrapment defense. They claim that use of the doctored bill evinced an intent to make the money highly visible and accessible. Such intent, in turn, would tend to show that the bill was protruding from the wallet, a fact *522 which allegedly bore on the dubious entrapment defense. But there is no indication that the People at trial would dispute that the money was intentionally placed in a highly visible position; even if they did, the court could instruct the jury that the money was doctored in the manner claimed by the defense, thereby providing support for defendants’ argument that the money was visible, or charge the jury that an adverse inference should be drawn against the prosecution on account of the missing evidence. Defendants’ second argument is that the doctored bill could have been used to impeach the credibility of the police officers who allegedly had previously stated that the bill was genuine. If the officers did make these statements, defendants’ interest in impeaching their credibility could have been protected by an instruction as to the bogus nature of the bill used.
Accordingly, the order of the Appellate Term should be reversed, the informations reinstated, and the case remitted to the Criminal Court of the City of New York for the fashioning of an appropriate sanction for the prosecutor’s failure to preserve evidence, in accordance with this opinion, and for further proceedings on the informations.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Meyer and Simons concur.
Order reversed, informations reinstated and case remitted to the Criminal Court of the City of New York, New York County, for further proceedings in accordance with the opinion herein.

. When the events in this case took place, section 450.10 of the Penal Law provided:
“1. When property, alleged to have been stolen, comes into the custody of a peace officer, he must hold it, subject to the order of the court authorized by subdivision two to direct the disposal thereof.
“2. On satisfactory proof of the title of the owner of the property, the court in which the criminal action is pending may order it to be delivered to the owner, unless its temporary retention be deemed necessary in furtherance of justice, on his paying the reasonable and necessary expenses incurred in its preservation, to be certified by said court. The order entitles the owner to demand and receive the property.”

. Since the evidence here was by statute discoverable and required to be retained, we need not consider whether the government was under a duty to preserve it pursuant to the Constitution (see California v Trombetta, 467 US _, 52 USLW 4744).